*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
February 28, 2019

v

No. 340978
Macomb Circuit Court
LC No. 2016-003921-FH

ZDZISLAW GNAT,

Defendant-Appellant.

Before: SWARTZLE, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of three counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c. Defendant was sentenced to concurrent prison terms of 57 to 180 months for the CSC-II convictions. We affirm.

This case arises from three incidents of sexual contact between defendant and his minor daughter, SG. SG testified about the sexual assaults at defendant's trial. Defendant is from Poland, and his ability to understand English became an issue at a pretrial hearing. The trial court recognized that defendant had a Polish accent and became concerned about the level of defendant's comprehension of the English language because defendant was considering a potential plea deal. The trial court and defendant had the following exchange at the hearing:

> *Q.* Do you read, write, and understand the English language?
>
> *A.* Yes, I do.
>
> *Q.* Okay. I noticed, and I'm not trying to embarrass you in any way, my parents were Polish speaking as well as English speaking, I just need to make sure. Is English your first language or were you growing up learning a different language?
>
> *A.* No. No, [y]our Honor. I, I grew, I was born and raised [in] Poland.

*Q.* Okay. And how long have you been speaking English?

*A.* I came to this country in 1995.

*Q.* Okay.

*A.* And, I'd say 1997, I started to speak English then.

*Q.* All right. So that's about [20] years you've been speaking English now; correct?

*A.* Yes. I'm still in progress learning, you know (unintelligible).

*Q.* All right. And what was the highest level of education you attained?

*A.* Bachelor degree.

*Q.* Okay. Where? What university?

*A.* In Poland, (unintelligible).

*Q.* Okay. What, what university?

*A.* University of (unintelligible).

*Q.* Okay. And have you had any difficulty understanding the proceedings or the words that are being used in these legal proceedings?

*A.* Yes, sometimes.

*Q.* Okay. In talking with your attorney, are you satisfied that you fully understand what the charges are against you and what the consequences are of you pleading no contest?

*A.* Yes, [y]our Honor.

No plea deal was reached, so defendant went to trial and was convicted of three counts of CSC-II. On appeal, defendant argues that both his constitutional due process rights and his statutory rights under MCL 775.19a were violated because the trial court failed to appoint an interpreter after defendant indicated that he sometimes did not understand the court proceedings and that he was still learning English.

A sound argument can be made that defendant waived this argument for appellate review. In *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000), our Supreme Court explained that waiver reflects the intentional abandonment or relinquishment of a known right and that a party who waives his or her rights cannot seek appellate review of a claimed deprivation of those rights, considering that the waiver extinguished any error. An associated principle is that a

defendant cannot harbor error as an appellate parachute. *People v Henry (After Remand)*, 305 Mich App 127, 162; 854 NW2d 114 (2014). Defendant expressly indicated to the trial court that he understood English and the nature of the charges against him. Minimally, the issue regarding whether defendant was entitled to an interpreter was not preserved, which implicates review for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). We also note that defendant bootstraps a claim of ineffective assistance of counsel with respect to the interpreter issue, regardless whether counsel waived or forfeited the issue.

In *People v Gonzalez-Raymundo*, 308 Mich App 175, 188; 862 NW2d 657 (2014), this Court discussed the rights at issue in the instant case, observing:

> The lack of simultaneous translation implicated defendant's rights to due process of law guaranteed by the United States and Michigan Constitutions. Specifically, a defendant has a right to be present at a trial against him, and a defendant's lack of understanding of the proceedings against him renders him effectively absent. In addition, lack of simultaneous translation impairs a defendant's right to confront witnesses against him and participate in his own defense. The right at issue is thus not merely statutory as codified by MCL 775.19a,[1] but constitutional, and thus subject to every reasonable presumption against its loss. [Citations omitted.]

Here, while defendant indicated that he was still "learning" English and that he "sometimes" had difficulty understanding the words in the legal proceedings, he also informed the trial court that he could read, write, and understand the English language, that he fully understood the charges against him and the nature of the plea offer, and that he had been speaking English for approximately 20 years. Moreover, defendant plainly understood and was able to answer the questions posed by the trial court. Additionally, SG testified that while her parents were married, the couple spoke English at home. And there was no indication at trial that SG had been unable to communicate with defendant at home, even though she spoke English and Arabic, but no Polish. The trial court committed no error, plain or otherwise, in not providing an interpreter for defendant and in not exploring the issue in more detail or beyond the discussion at the pretrial hearing.

Defendant asserts an associated claim that trial counsel was ineffective for failing to request an interpreter. Based on the record discussed above, we find it clear that defendant did not need an interpreter and was capable of understanding the proceedings, the testimony, his

---

[1] MCL 775.19a provides, in part:

> If an accused person is about to be examined or tried and it appears to the judge that the person is incapable of adequately understanding the charge or presenting a defense to the charge because of a lack of ability to understand or speak the English language, . . . the judge shall appoint a qualified person to act as an interpreter.

attorney, and the trial court itself. Accordingly, defense counsel's performance in failing to request an interpreter was not constitutionally deficient, i.e., it did not fall below an objective standard of reasonableness. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001); *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). Moreover, given the record, defendant cannot establish that the trial court would have provided an interpreter even if counsel had requested one. The record shows that the trial court plainly did not think that there was a need for an interpreter or translation assistance. Therefore, any request for an interpreter would have been futile, and counsel is not ineffective for failing to raise meritless or futile matters. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Moreover, even were we to assume counsel's performance was deficient, we note that defendant simply cannot show the requisite prejudice under the circumstances. *Carbin*, 463 Mich at 600.

Defendant next argues that he was denied his constitutional right to a fair trial when the trial court admitted a "plethora of evidence" regarding uncharged allegations of domestic abuse committed by defendant against his ex-wife—SG's mother. Defendant asserts that the evidence was substantially more prejudicial than probative. This Court reviews for an abuse of discretion a trial court's decision to admit evidence. *People v Jackson*, 498 Mich 246, 259; 869 NW2d 253 (2015). We review de novo underlying questions of law. *Id.* "A trial court abuses its discretion when it makes an error of law in the interpretation of a rule of evidence." *Id.*

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Other-acts evidence is admissible if it is offered for a proper purpose under MRE 404(b), if it is relevant under MRE 401 and 402 as enforced through MRE 104(b), and if the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice under MRE 403. *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993). A proper purpose is one that requires the factfinder to make an intermediate inference other than one about the person's character or criminal propensity. *Id*. at 87. "MRE 404(b) is a rule of inclusion rather than a rule of exclusion." *People v Brown*, 294 Mich App 377, 385; 811 NW2d 531 (2011). The list of proper purposes for admitting evidence provided by MRE 404(b) is not exhaustive. *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000). "A proper purpose for admission is one that seeks to accomplish something other than the establishment of a defendant's character and his propensity to commit the offense." *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 724 (2005).

Defendant's argument is focused on the MRE 403 component of the *VanderVliet* test. MRE 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." "All evidence offered by the parties is 'prejudicial' to some extent, but the fear of prejudice does not generally render the

evidence inadmissible." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). MRE 403 prohibits the admission of marginally probative evidence that will likely be given undue weight—that is, "evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect." *Id.* at 75-76 (quotation marks and citation omitted). Evidence has probative value if it tends to make the existence of a material fact "more probable or less probable than it would be without the evidence." *People v Crawford*, 458 Mich 376, 389-390; 582 NW2d 785 (1998).

In this case, evidence of defendant's physical abuse of SG's mother, which SG witnessed, was offered for the purpose of explaining why SG did not immediately disclose defendant's sexual abuse. The testimony by SG indicated that defendant made death threats in an effort to prevent her from disclosing the sexual abuse. Defendant's threats were aimed at SG's mother should SG fail to keep quiet about the sexual assaults. SG's credibility was aggressively attacked by defendant at trial. We conclude that the other-acts evidence was relevant to the issue of SG's credibility. MRE 401-402. Credibility was the key issue at trial, and it was proper for the jury to hear and assess evidence that might explain why SG delayed in disclosing the sexual abuse. Evidence that SG saw defendant repeatedly physically abuse her mother coupled with SG's testimony that defendant threatened to harm or kill her mother should SG disclose the sexual abuse provided the jury with the context necessary to weigh SG's credibility.

The other-acts evidence was highly, not merely marginally, probative on the issue of SG's credibility. It provided support for the position that SG fully understood that defendant had the capacity and willingness to assault and kill SG's mother, making his threats real in SG's mind and more probable that SG delayed disclosing the sexual abuse because of the history of domestic assaults against her mother. Moreover, the highly probative value was not substantially outweighed by the danger of "unfair" prejudice. Under the circumstances, any prejudice cannot be deemed "unfair." The trial court did not abuse its discretion or otherwise err in admitting the challenged other-acts evidence concerning defendant's domestic abuse of his ex-wife.[2]

Finally, defendant argues that he was denied a fair trial because the prosecutor committed misconduct during her closing argument when she made purported statements of fact that were unsupported by the evidence and vouched for SG's credibility. Defendant contends that the cumulative effect of the prosecutor's inappropriate comments requires reversal. "A prosecutor may not make a factual statement to the jury that is not supported by the evidence, but he or she is free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case." *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007) (citation omitted). "A prosecutor may not vouch for the credibility of his witnesses by suggesting that he has some special knowledge of the witnesses' truthfulness," but "the prosecutor may argue from the facts that a witness should be believed." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009) (citation and quotation marks omitted). We

---

[2] Additionally, we conclude that the argument defendant presents under MCL 768.27a is irrelevant because the plain language of the statutory provision is not implicated under the facts of this case. Rather, MRE 404(b) governed the admissibility of the other-acts evidence.

acknowledge that a prosecutor's role and responsibility is to seek justice and not merely convict; consequently, the test for prosecutorial misconduct is ultimately whether a defendant was denied a fair and impartial trial. *Dobek*, 274 Mich App at 63-64.

In reviewing the challenged remarks, we find some merit to defendant's contentions and will review them with the assumption that the prosecutor's comments were improper. To properly reverse on the basis of cumulative error, however, the effect of the errors must be seriously prejudicial and warrant a conclusion that the defendant was denied a fair trial. *People v Ackerman*, 257 Mich App 434, 454; 669 NW2d 818 (2003).

Here, the prosecutor's presumed improper comments during her closing argument did not deny defendant a fair trial. The trial court instructed the jury that the lawyers' arguments were not evidence, that the jury should decide the facts from the evidence, and that the jury had to determine the credibility of the witnesses. "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Additionally, SG's testimony was strong, direct evidence of defendant's guilt. Furthermore, this Court has previously "decline[d] to reverse a conviction where isolated, improper remarks did not cause a miscarriage of justice." *Seals*, 285 Mich at 25; see also MCL 769.26. Therefore, while the prosecutor may have made several inappropriate remarks, in our review, her comments did not deny defendant a fair trial.

We affirm.

/s/ Jane E. Markey
/s/ Amy Ronayne Krause