*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MATTHEW BRUCE WHETTER,

      Defendant-Appellant.

UNPUBLISHED
May 28, 2026
8:52 AM

No. 369760
Ionia Circuit Court
LC No. 2022-018511-FH

Before: TREBILCOCK, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

A jury convicted defendant of operating a motor vehicle while intoxicated (OWI), third offense, MCL 257.625(1) and (9)(c), and driving while his license was suspended, revoked, or denied (DWLS), MCL 257.904(1). The trial court sentenced defendant, a third-offense habitual offender, MCL 769.11, to 20 months to 10 years' imprisonment for the OWI-3d and 74 days' imprisonment for DWLS. We affirm.

## I. FACTS

At about 2:09 a.m., on Friday, April 1, 2022, a man driving home from work called 911 to report two people in a car had driven off a curve into a ditch. He described the person in the driver's seat as having their head slumped over.

Ionia County Sheriff's Office Sergeant Fredrick Straubel was dispatched and his in-car camera footage reflected that he arrived at 2:46 a.m. At trial, Straubel testified that skid marks on the roadway showed that the driver of a 2003 Toyota Camry had been travelling eastbound when he failed to realize that there was a curve[1] and subsequently locked up the brakes before driving straight off the road into a ditch.

---

[1] The curve was referred to as "Dead Man's Curve" and Straubel had responded to other accidents there.

Defendant, who was sitting in the driver's seat, was bleeding from a facial injury that aligned with cracking on the driver's side windshield. Defendant's speech was extremely slurred, and his eyes were bloodshot. Straubel also smelled alcohol emanating from the car.

Straubel asked whether defendant had a driver's license and where he was coming from. Instead, defendant responded that he was "heading home," providing an address. Defendant admitted that he did not have a driver's license. When Straubel saw defendant's wallet in the driver's side door bin, he again asked whether defendant had a driver's license. Defendant responded negatively. Straubel then turned to the man in the passenger seat, inquiring whether he had identification. The passenger provided it and was identified as Timothy Cypher.

At that point, Sergeant Straubel had defendant step out of the car and asked him why he was bleeding. Initially, defendant just looked at Straubel dumbfounded. When asked again, defendant answered: "Golf." Straubel queried: "You got that from playing golf?" Defendant responded: "I did?" Later, defendant said he was involved in an altercation.

When Straubel noticed that Cypher had gotten out of the car, he ordered him back inside. Straubel then went over to Cypher to ensure that he understood he had to remain in the car. Cypher told Straubel that he caused the accident. Straubel asked Cypher to explain what he meant. Cypher responded that he "grabbed the steering wheel." Straubel then asked Cypher to explain why and he did not. Straubel understood Cypher's assertation to mean that defendant had been driving the car.[2]

Straubel returned to defendant. Defendant admitted that he drank two IPAs and reported that his last drink was 2, 2 ½, or 2 ¾ hours earlier.

After defendant failed the field sobriety tests, Straubel arrested him for OWI. And during a discussion about defendant's driver's license status, defendant said that he was not driving. Straubel sarcastically responded: "No, you ain't."

Eventually, Straubel put defendant in the back seat of his patrol car and transported him to the hospital. During the transport, defendant called the woman that Straubel believed was the Camry's registered owner and told her that he was not coming home and was intoxicated. Later, defendant separately stated: "I f***ed up so bad" and "I apologize, sir." Additionally, defendant asked Straubel if he could "just let this one go?" Straubel declined.

After defendant opted out of a consensual blood draw, Straubel obtained a search warrant to perform one. Defendant's blood was drawn at 5:24 a.m. Subsequent laboratory testing showed defendant's blood-alcohol level was 0.234 with a plus or minus variation of 0.022 grams of alcohol per 100 milliliters of blood.

At trial, defense counsel presented two witnesses—Cypher and defendant. Cypher testified that he was currently living in Florida, receiving food stamps, reading his Bible for the past year, and walking about 15 miles daily to lose weight. Despite sending out about 320 job applications,

---

[2] Eventually, another MSP trooper arrived and dealt with Cypher and the car.

Cypher remained unemployed.  Due to Cypher's financial status, defendant's family paid for Cypher's plane ticket to Michigan.

At the time of the April 2022 accident, Cypher was living with defendant and paying him rent, despite not having a job.  Cypher also did not have a driver's license and had two drunk-driving convictions.  He and defendant were leaving defendant's friend's house.  It was dark, cold, and snowy.  Because defendant had been drinking "a lot," Cypher was forced to drive the car.

Cypher was not familiar with the area and went the wrong way.  At the curve, Cypher slid off the road due to the bad conditions.[3]  Cypher estimated that the accident occurred anywhere from 11:30 p.m. to 1:30 a.m.

According to Cypher, defendant, who was in the passenger seat, went "flying across the front" of the car and his face hit the windshield, breaking it.  Defendant was "bleeding all over."  Cypher opined that it was impossible for the Camry's driver to come into contact with the windshield while sitting behind the steering wheel.

Once in the ditch, the car's wheels were up in the air.  Defendant suggested that Cypher, who weighed about 50 pounds more at that time, could sit on the vehicle and they could move it.  Defendant, who was in the driver's seat, then attempted to press the gas, but the tires would just spin.[4]

After Straubel arrived, Cypher tried to tell him that he was driving, but "did not do very well with it."  The accident and defendant being charged put stress on their relationship.  In May 2022, defendant asked Cypher to move out, which he did.

Cypher also testified that, after the accident, he sought out defendant's attorney, whom he knew first, to help him with what he believed would be a driving without a license charge.  Cypher explained to the attorney that he had "trouble with the law," describing how he had been driving, went off the road, and his roommate had been charged.  Cypher recalled the attorney responding that it sounded like Cypher's roommate needed him more.  And, after defendant retained the attorney,[5] he informed Cypher that he could not represent both of them.

When defendant testified, he confirmed that he was intoxicated and that was why Cypher was driving.  Defendant further admitted that his license was revoked at that time.  Defendant recounted how Cypher became lost, missed a turn, and ran into the ditch.  At that time, defendant, who was in the passenger seat and not wearing his seatbelt, "went flying," injuring his face.

Defendant and Cypher got out of the car,[6] which was stuck.  Because it was getting cold, Cypher got into the passenger seat while defendant took the driver's seat.  Defendant could "barely

---

[3] Straubel's traffic crash report reflected that the roads were dry.

[4] In rebuttal, Straubel testified that he did not see footprints in the area of the accident.

[5] The record reflects that counsel filed an appearance for defendant on April 11, 2022.

[6] Again, Straubel testified that he saw no footprints in the area.

get in underneath the steering column" so he emptied his pockets, throwing his wallet in the driver's side door bin.

Defendant was in the process of calling the owner of the car to let her know what had happened. At that point, about 45 minutes to an hour after the accident, Sergeant Straubel arrived. He shined his flashlight and remarked: "Pretty strange place to park your car[.]" Defendant "just froze" because he was not driving when the accident occurred.

In closing argument, the prosecutor suggested that Cypher was lying for defendant because defendant's family had paid for Cypher's travel from Florida to Michigan to testify at trial. Defense counsel did not object.

After filing his claim of appeal, defendant moved for a new trial and *Ginther*[7] hearing in the trial court on the basis of ineffective assistance of counsel. Defendant argued that defense counsel failed to call as a witness Tiffany Young, Cypher's longtime friend, who would have rebutted the prosecutor's claim that Cypher fabricated his testimony. Young would have testified that shortly after the accident, Cypher told her that he was the driver. Defense counsel reported that he did not call Young because she would have also testified that defendant got into the driver's seat and tried to back the car out of the ditch, which defense counsel believed would establish a second theory of operating while intoxicated. In appellate counsel's view, trial counsel's rationale was based on a misunderstanding of law, rendering his performance deficient. Therefore, defendant was entitled to a *Ginther* hearing.

The trial court denied defendant's motion. It determined that a *Ginther* hearing was unnecessary, concluding that "[t]here was overwhelming evidence of [defendant's] guilt." The trial court noted that Young was not a res gestae witness and that there was a question whether Cypher's statement to her would have been admissible to prove that Cypher was driving. The trial court also observed that neither defendant nor Cypher "were believable." And it remarked that defense counsel was "extremely" conscientious and had requested a *Cobbs*[8] "early on."

Defendant then moved in this Court to remand the case for a *Ginther* hearing, which this Court denied without prejudice to him filing another motion for remand supported by Young's

---

[7] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[8] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993), authorizes a court, on a party's request, to state a preliminary evaluation of an appropriate sentence for the charged offense, and, if it later decides that an appropriate sentence exceeds the preliminary evaluation, a defendant who pled guilty in reliance on that preliminary evaluation could withdraw his plea.

affidavit.[9] Defendant later filed a second motion to remand that included Young's affidavit,[10] which this Court also denied.[11]

## II. STANDARDS OF REVIEW

"We review a trial court's decision regarding a motion for a new trial for an abuse of discretion." *People v Kevorkian*, 248 Mich App 373, 410; 639 NW2d 291 (2001). A trial court abuses its discretion when it "chooses an outcome that falls outside the range of principled outcomes." *People v Gonzalez-Raymundo*, 308 Mich App 175, 186; 862 NW2d 657 (2014). Similarly, we review a trial court's decision whether to hold an evidentiary hearing for an abuse of discretion. *People v Danto*, 294 Mich App 596, 613; 822 NW2d 600 (2011). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Issues of constitutional law are reviewed de novo. *Id*. But a trial court's findings of fact are reviewed for clear error. *Id*. When this Court denies a defendant's motion for remand to the trial court for a *Ginther* hearing, "our review is for errors apparent on the record." *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

## III. ANALYSIS

Defendant argues that defense counsel provided ineffective assistance because he failed to call Young to testify. Defendant asks this Court to order a *Ginther* hearing on his claim.

As a threshold issue, we consider the admissibility of Young's proposed testimony. Though in general, a witness's prior consistent statement "may not be introduced to bolster that witness's credibility until his or her credibility has been attacked," *People v Murry*, 108 Mich App 679, 683; 310 NW2d 836 (1981), such a statement may be admitted under MRE 801(d)(1)(B),[12] which provides:

---

[9] *People v Whetter*, unpublished order of the Court of Appeals, entered October 21, 2024 (Docket No. 369760).

[10] Young averred that Cypher was her friend "since the early 1990s" and they had met in college. "[W]ithin a week after [Cypher] got into a car accident with [defendant] in 2022," Cypher called Young. He told her that "he had been driving the car when it crashed in the ditch" and that "after the crash, he got out of the driver's seat and [defendant] got in the driver's seat and tried to back the car out of the ditch, but it would not move." Young had spoken to defendant's trial counsel about Cypher's phone call and admission that he had been driving at the time of the accident, but she was not called to testify at trial.

[11] *People v Whetter*, unpublished order of the Court of Appeals, entered January 21, 2025 (Docket No. 369760).

[12] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of trial.

(d) A statement is not hearsay if—

> (1) The declarant testifies at the trial . . . and is subject to cross-examination concerning the statement, and the statement is

> \* \* \*

>> (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. . . .

In *People v Jones*, 240 Mich App 704, 706-707; 613 NW2d 411 (2000) (quotation marks and citation omitted), this Court held under MRE 801(d)(1)(B):

> [T]he party offering the prior consistent statement must establish four elements:

>> (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose.

Further, "the motive in the second element must be the same motive in the fourth element of the four-pronged test to admit a prior consistent statement under MRE 801(d)(1)(B)." *Id*. at 711.

In this case, the trial prosecutor suggested that Cypher's testimony was motivated by defendant's family paying his travel expenses to Michigan. Young's conversation with Cypher took place shortly after the accident. Therefore, Cypher's prior, consistent statement that he drove the car into the ditch was made before any potential motive to fabricate arose from the travel payment. See *id*. at 707, 711. As a result, Young's proposed testimony would be admissible under MRE 801(d)(1)(B). See *id*. at 706-707, 709-711.

To establish ineffective assistance of counsel warranting a new trial, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). A trial counsel's performance is presumed to be "born from a sound trial strategy." *Id*. at 52. That is, "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004).

"[T]he failure to call a particular witness at trial is presumed to be a matter of trial strategy, and an appellate court does not substitute its judgment for that of counsel in matters of trial strategy." *People v Seals*, 285 Mich App 1, 21; 776 NW2d 314 (2009). "Yet a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52.

-6-

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Such a finding "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v Pinholster*, 563 US 170, 189; 131 S Ct 1388; 179 L Ed 2d 557 (2011) (quotation marks and citation omitted).

"Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *People v Passage*, 277 Mich App 175, 177; 743 NW2d 746 (2007). Under MCL 257.625(1), "A person, whether licensed or not, shall not operate a vehicle on a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person is operating while intoxicated."

Again, defendant argues that he was denied effective assistance of counsel because defense counsel failed to call Young, who would have rebutted the prosecutor's charge of recent fabrication. Defendant further asserts that defense counsel's stated reason for not calling Young arose from counsel's misunderstanding of the law, namely, that it could establish a second instance of operation of the vehicle by defendant.

Appellate counsel maintains that even if defendant had pressed the accelerator while attempting to back out of the ditch, he was not operating the car because it was immovable. Defendant cites *People v Wood*, 450 Mich 399; 538 NW2d 351 (1995), in support of this argument. Defendant, however, fails to address MCL 257.35a(a) of the Michigan Vehicle Code, MCL 257.1 *et seq.*, which defines "operating" as "[b]eing in actual physical control of a vehicle." Further, *Wood* is "inapplicable to [a] situation involving a conscious (albeit allegedly intoxicated) driver who was sitting inside a stationary vehicle and engaged in operational activity such as starting the engine and changing gears." *City of Plymouth v Longeway*, 296 Mich App 1, 9; 818 NW2d 419 (2012).

Per her affidavit, Young would testify that Cypher said that "[defendant] got in the driver's seat and tried to back the car out of the ditch, but it would not move." Under MCL 257.625(1), as defined by MCL 257.35a, it does not matter whether the car did not actually move as a result of defendant's attempt. See *Longeway*, 296 Mich App at 2-3. Therefore, defense counsel's concern was justified because Young's testimony that defendant attempted to back the car out of the ditch could establish that defendant operated the car. See MCL 257.35a; MCL 257.625(1); *Longeway*, 296 Mich App at 2-3, 9.

Second, to support that defense counsel misunderstood the risk of presenting Young's testimony, defendant argues that the ditch in which the car was stuck was not "generally accessible to motor vehicles" under MCL 257.625(1) because he could not get it out of the ditch. We disagree.

As used in MCL 257.625(1), a "place . . . generally accessible to motor vehicles" has been defined to mean a place that is "usually capable of being reached by self-propelled vehicles." *People v Rea*, 500 Mich 422, 431; 902 NW2d 362 (2017). In *People v Parrott*, 335 Mich App 648, 675-678; 968 NW2d 548 (2021), this Court upheld a trial court's application of *Rea* led it to

conclude that both the ditch adjacent to the road and a nearby field were generally accessible to motor vehicles. The *Parrott* panel reasoned, "Although [the] defendant argues on appeal that his vehicle had to be extracted from the field with a tow truck, this does not change the fact that the area was 'in a place that [was] . . . capable of being reached by [a] self-propelled vehicle[].' " *Id*. at 677, quoting *Rea*, 500 Mich at 431(second, third, and fourth alteration in original).

In this case, the car was similarly capable of reaching the ditch. See *id*. As Straubel testified, he had previously been to the same area, known as "Dead Man's Curve," on other accidents. Again, defense counsel's concern was justified because Young's testimony could establish that defendant operated the car in an area generally accessible to motor vehicles. See MCL 257.625(1); *Parrott*, 335 Mich App at 676-678.

Accordingly, we conclude that defense counsel had reason to be concerned that presenting Young's testimony could establish an alternate basis for the factfinder to conclude that defendant operated the car while intoxicated. Thus, defendant has not overcome his "heavy burden" of proving that defense counsel's decision not to call Young as a trial witness fell below a professional standard of reasonableness. See *Trakhtenberg*, 493 Mich at 51; *Solmonson*, 261 Mich App at 663. And we decline to "substitute [our] judgment for that of counsel in matters of trial strategy." *Seals*, 285 Mich App at 21.

In any event, we also conclude that defendant failed to establish that, but for defense counsel's alleged deficient performance, "there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. Young's proposed testimony was that Cypher had identified himself as being the driver of the car within a week of the accident. Young's testimony could potentially rehabilitate Cypher's credibility after the prosecutor's argument that Cypher was testifying falsely to obtain a trip to Michigan paid for by defendant's family. Although it is "conceivable" that such evidence could influence the jury's determination whether Cypher was telling the truth at trial, there is not a "substantial" likelihood of a different result at trial. See *Pinholster*, 563 US at 189 (quotation marks and citation omitted).

Initially, we note that the jury had already heard Cypher testify that he told defendant's attorney that Cypher was the driver before the alleged motive of a trip to Michigan arose. Further, there was significant circumstantial and direct evidence that allowed the jury to conclude that defendant was the driver. First, defendant was sitting in the driver's seat with a head injury that aligned with the damage to the driver's side windshield while Cypher appeared uninjured.[13] Second, despite defendant's and Cypher's testimony at trial that defendant flew from the passenger seat into the driver's side window, defendant initially told Sergeant Straubel, his facial injury was from "golf," before later saying it was from a fight. Third, defendant's wallet was in the driver's side door bin. Fourth, the man who called 911 observed the person in the driver's seat after the accident as being "slumped" in a way that aligned with defendant's head injury. Fifth, on the night

---

[13] Notably, at sentencing, the trial court remarked that the jury was "interested" in the testimony about who was driving the car. When it was revealed that defendant was injured and the location of the broken windshield on the driver's side, the court recalled "one of the jurors shaking his head, and he was satisfied at that point in time, as least [in the court's] assessment of his reaction, that [defendant was] the one . . . driving [the car]."

of the accident, both defendant and Cypher made statements that suggested defendant was the driver. For example, defendant informed Straubel that he was headed home, and it was only after Straubel arrested him that he denied driving the car. Straubel responded sarcastically and defendant did not say that Cypher was driving the car or discuss an effort to extricate the car. Instead, defendant was recorded saying that he "f***ed up so bad" and apologizing to Sergeant Straubel. In fact, defendant asked Straubel whether he could "just let this one go," which Straubel declined to do. For his part, Cypher told Straubel that he grabbed the wheel, which led to the accident. Cypher did not say he was driving and grabbing the wheel is consistent with the actions of a passenger, not a driver. Given that the jury discredited Cypher and defendant's consistent testimony along with Cypher's earlier disclosure to defendant's attorney, we conclude that defendant failed to meet his burden of establishing a reasonable probability that Cypher's prior statement to Young would result in a different outcome. See *Strickland*, 466 US at 694; *Trakhtenberg*, 493 Mich at 51. For all of the foregoing reasons, defendant has failed to establish ineffective assistance of counsel. See *Trakhtenberg*, 493 Mich at 51; *Solmonson*, 261 Mich App at 663.

Finally, the trial court did not abuse its discretion by denying defendant's motion for a new trial and *Ginther* hearing. *Gonzalez-Raymundo*, 308 Mich App at 186; *Danto*, 294 Mich App at 613; *Kevorkian*, 248 Mich App at 410. We likewise decline to grant defendant's request for a *Ginther* hearing because we have accepted all of the factual allegations in Young's affidavit as true and concluded that defendant is not entitled to relief.

Affirmed.

/s/ Christopher M. Trebilcock
/s/ Mark T. Boonstra
/s/ Anica Letica