*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

　　　　Plaintiff-Appellee,

v

HIEU VAN HOANG,

　　　　Defendant-Appellant.

FOR PUBLICATION
May 7, 2019
9:05 a.m.

No. 336746
Chippewa Circuit Court
LC No. 15-001826-FC

Before: SWARTZLE, P.J., and CAVANAGH and CAMERON, JJ.

CAMERON, J.

Defendant, Hieu Van Hoang, appeals his jury-trial convictions of assault with intent to murder, MCL 750.83, attempted murder, MCL 750.91, and first-degree arson, MCL 750.72. The trial court sentenced Hoang as a second-offense habitual offender, MCL 769.10, to life imprisonment for each offense. On appeal, Hoang argues that he was denied his Sixth Amendment right to counsel because his court-ordered Vietnamese interpreter was not physically present during his pretrial meetings with his attorney. He also raises numerous errors that he contends denied him the effective assistance of counsel. We affirm.

## I. BACKGROUND

Hoang and his then wife, Anh Thi-Ngoc Nguyen, lived in an apartment above a nail salon that they owned and operated in Sault Ste. Marie. Nguyen testified that on June 16, 2015, she and Hoang had been arguing before she went to bed alone. Later that night, Hoang woke Nguyen by throwing a phone at her. Hoang was shouting at her as he poured gasoline on the bed. Hoang threatened to stab Nguyen if she tried to leave the room, and he pushed his wife back toward the bed and lit either a match or a lighter.[1] Because her clothing was soaked in gasoline, Nguyen opened the window to escape, causing the unsecured air conditioning unit to

---

[1] Nguyen was not clear at trial whether Hoang used matches or a lighter to start the fire.

-1-

fall out of the window opening, and she jumped out the second-story window to the sidewalk below. Nguyen suffered severe injuries from the fall requiring hospitalization.

A neighbor testified that she saw an air conditioning unit fall out of Nguyen's apartment window and then saw Nguyen jump down immediately after. The neighbor called 911 and then went to assist Nguyen. An on-duty United States Border Patrol agent saw the neighbor with Nguyen, who was sitting on the sidewalk crying. The agent looked up and, seeing smoke billowing from the apartment window, called Central Dispatch. Firefighters, paramedics, and police officers then responded to the scene, and the fire was quickly contained. The paramedics treated Nguyen, who smelled strongly of gasoline, and took her to the hospital in an ambulance. Firefighters found a gas can in the bedroom, a broken back window, and a broken back door, and they alerted the police to these suspicious circumstances. The fire department's investigator recovered a green cigarette lighter from outside the building near the blood on the sidewalk where Nguyen had landed and placed it into evidence. A police investigator concluded that the fire was the result of arson because of the irregular burn pattern on the mattress, the presence of gasoline in the bedroom, and gasoline found on samples collected from the mattress, the bedding, and the clothing worn by Nguyen and Hoang.

A police officer transported Hoang from the hospital to the police station where a police detective interviewed Hoang. According to the detective, Hoang appeared intoxicated and at times spoke in broken English, but the two were able to communicate without an interpreter. In fact, Hoang denied an offer for an interpreter and gave a statement to police about the circumstances surrounding the fire, claiming that he was asleep when the fire started. After a short interview, a search warrant was executed, and police officers seized Hoang's clothing and searched the apartment. Hoang was then arrested on charges of assault with intent to murder.

At the outset of the proceedings, the trial court appointed Hoang a Vietnamese interpreter who was physically present and provided interpretation services for all hearings and the trial. In March 2016, Hoang sent the first of many letters from jail to the trial court insisting that he needed an interpreter for his pretrial discussions with his attorney. Other inmates, who were apparently fluent in both Vietnamese and English, transcribed the letters for Hoang. The first letter, sent in March 2016, asserted that Hoang needed an interpreter "because of the language barrier" between him and his attorney. Hoang also asserted that the translation of his jail calls between him and Nguyen was not accurate and asked the trial court to have the recordings be retranslated. Six days later, Hoang wrote another letter, requesting "to have his court appointed interpreter present to go over plea offers and evidence because of his language barrier," and he again asked that the jail calls be retranslated. Hoang then wrote another letter in March, expressing his desire "to go over all evidence and plea offers with his interpreter so there are no misunderstandings before court proceedings continue." In April 2016, before his plea hearing, Hoang wrote another letter to the trial court in which he acknowledged that an interpreter was available via speakerphone when he met with his attorney. According to Hoang, however, he needed to have the interpreter physically present at the meeting to go over evidence "so there is no confusion." Hoang expressed his need to personally meet with the interpreter on the day of his upcoming hearing in order to understand the evidence.

On April 19, 2016, the trial court held a plea hearing. The interpreter was physically present at the hearing, and Hoang explained to the trial court that he wanted the jail calls between

him and his wife retranslated because the transcripts of the calls were inaccurate and incomplete because they included only a portion of their conversations. The trial court denied Hoang's request, explaining that the evidence of the jail calls was an issue for trial. Thereafter, Hoang confirmed that he wanted his case to proceed to trial. During the hearing, neither Hoang nor his attorney raised the issue that an interpreter needed to be physically present during attorney-client discussions at the jail.

After the plea hearing, however, Hoang wrote another letter to the trial court, acknowledging again that, although the interpreter participated in his recent discussion with his attorney via speakerphone, she was not physically present. Hoang challenged the trial court in his letter: "How [am I] suppos[ed] to review all the evidence and pleas with someone over a phone that does not have the same paperwork [I have]?" According to Hoang, he could not take a plea "when he does not understand the evidence or the evidence is incomplete." In three more letters sent to the trial court before trial, Hoang continued to express his need for an interpreter to be physically present when meeting with his attorney to review the paperwork and evidence in his case. Hoang explained that "[t]he interpreter has only appeared via speakerphone, which [he] has found to be fruitless." Hoang also reiterated that he had not received the complete transcripts to the jail calls with his wife.

The trial began on September 19, 2016. Hoang testified at trial that on the night of the fire he drank one or two beers, as he did every night before bed, and fell asleep before Nguyen went to bed. He stated that he was asleep when the fire started, but his wife was still awake. When Hoang awoke, he saw a fire on his side of the bed. He claimed that he was able to jump out of bed and avoid injury from the fire, but in doing so he kicked the gas can that had been moved to the bedroom because their dogs had knocked it over earlier that day where it was usually stored.

The jury found Hoang guilty of assault with intent to murder, attempted murder, and first-degree arson. The trial court sentenced Hoang to life imprisonment for each offense. On appeal, Hoang filed an appellate brief, claiming the denial of his Sixth Amendment right to counsel because his court-appointed interpreter was not physically present to help Hoang review discovery and facilitate communications with trial counsel. Additionally, Hoang filed a Standard 4 brief, along with a motion to remand in this Court, requesting an evidentiary hearing to develop the record regarding his claims that trial counsel failed to impeach Nguyen's testimony, failed to introduce a letter Nguyen allegedly wrote to Hoang stating that she lied to the police about him starting the fire, and failed to introduce evidence of the jail calls between Nguyen and Hoang, which were improperly translated and proved his innocence.

This Court remanded the case to allow Hoang the opportunity to submit the letter from Nguyen, to appoint a new translator, and to have the trial court determine whether an evidentiary hearing was required.[2] On remand, the trial court inquired into the letter that Nguyen allegedly

---

[2] *People v Hoang*, unpublished order of the Court of Appeals, entered November 20, 2017 (Docket No. 336746).

-3-

wrote and had a different translator retranslate two of the jail calls between Nguyen and Hoang. After reviewing an affidavit from trial counsel, a letter from Nguyen stating that no such letter to Hoang existed, and the new translations of the jail calls, the trial court determined that an evidentiary hearing was not warranted. The trial court entered an order following remand, and it concluded there was insufficient evidence to corroborate Hoang's claim that Nguyen wrote an exculpatory letter, and it further concluded that the new translations were substantially similar to the old ones. Therefore, the trial court denied an evidentiary hearing, completing all actions in compliance with our Court's remand. Having retained jurisdiction, this Court now addresses Hoang's claims on appeal.

## II. THE USE OF AN INTERPRETER DURING PRETRIAL PREPARATIONS

In his appellate brief, Hoang argues that he was denied his Sixth Amendment right to counsel at critical stages of the proceedings—trial preparation and plea discussions—because his court-appointed interpreter was not physically present during his attorney-client discussions, including reviewing the evidence, developing a trial strategy, and determining whether defendant should accept a plea offer. We disagree.

### A. STANDARD OF REVIEW

Generally, whether a defendant's right to counsel was violated is a constitutional issue that this Court reviews de novo. *People v Hickman*, 470 Mich 602, 605; 684 NW2d 267 (2004). Additionally, we review de novo the proper interpretation of statutes and court rules. *People v Skinner*, 502 Mich 89, 99; 917 NW2d 292 (2018); *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018).

### B. ANALYSIS

Both the United States and Michigan Constitutions guarantee a criminal defendant the right to counsel. US Const, Am VI; Const 1963, art 1, § 20. The Sixth Amendment states, in relevant part: "In all criminal prosecutions, the accused shall enjoy . . . the Assistance of Counsel for his defence." US Const, Am VI. The Michigan Constitution states: "In every criminal prosecution, the accused shall have the right . . . to have the assistance of counsel for his or her defense." Const 1963, art 1, § 20. "The right to counsel guaranteed by the Michigan Constitution is generally the same as that guaranteed by the Sixth Amendment; absent a compelling reason to afford greater protection under the Michigan Constitution, the right to counsel provisions will be construed to afford the same protections." *People v Marsack*, 231 Mich App 364, 373; 586 NW2d 234 (1998).

One's right to counsel does not attach until "after adversarial legal proceedings have been initiated against a defendant by way of indictment, information, formal charge, preliminary hearing, or arraignment," *id*. at 376-377, and it extends to every critical stage of the proceedings, *People v Anderson (After Remand)*, 446 Mich 392, 402; 521 NW2d 538 (1994). "The pre-trial period constitutes a 'critical period' because it encompasses counsel's constitutionally imposed duty to investigate the case," and "[c]ounsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Mitchell v Mason*, 325 F 3d 732, 743 (CA 6, 2003), citing *Strickland v Washington*,

466 US 668, 691; 104 S Ct 2052; 80 L Ed 2d 657 (1984) (reviewing our Supreme Court's decision after the defendant filed a petition for habeas relief and concluding that the defendant was denied his Sixth Amendment right to counsel when his attorney was suspended for 30 days during the pretrial period and was unable to communicate with the defendant and form a trial strategy).

Hoang argues that he was denied his Sixth Amendment right to counsel because his interpreter was not physically present during trial preparation and plea discussions with his attorney, making it difficult to review the paperwork and the evidence in the case. Thus, without an interpreter physically present at the meetings between himself and his attorney, Hoang claims that he and his attorney were unable to properly prepare for trial, and Hoang could not fully understand any offered pleas, which effectively denied him his right to counsel during a critical stage of the proceedings. This argument is without merit.

Hoang's argument implicates both statutory and constitutional considerations, neither of which have been directly addressed by this Court. Significantly, our courts have yet to determine whether the absence of an in-person interpreter during the pretrial stage of the proceedings implicates a defendant's constitutional right to counsel. However, on the record in this case, we do not detect a statutory or constitutional error with regard to the trial court's appointment of an interpreter or trial counsel's utilization of that interpreter.

## 1. RIGHT TO AN INTERPRETER UNDER MCL 775.19a AND MCR 1.111

MCL 775.19a provides the standard upon which trial courts must appoint an interpreter:

If an accused person is about to be examined or tried and it appears to the judge that the person is incapable of adequately understanding the charge or presenting a defense to the charge because of a lack of ability to understand or speak the English language, the inability to adequately communicate by reason of being mute, or because the person suffers from a speech defect or other physical defect which impairs the person in maintaining his or her rights in the case, the judge shall appoint a qualified person to act as an interpreter.

In 2013, our Supreme Court adopted MCR 1.111, which governs the requirements of foreign language interpreters. Under MCR 1.111(B)(1):

If a person requests a foreign language interpreter and the court determines such services are necessary for the person to meaningfully participate in the case or court proceeding, or on the court's own determination that foreign language interpreter services are necessary for a person to meaningfully participate in the case or court proceeding, the court shall appoint a foreign language interpreter for that person if the person . . . is a party.

While not raised by Hoang, we first consider the statute and court rule governing interpretation services. The record shows that the trial court complied with the requirements provided under both MCL 775.19a and MCR 1.111(B)(1). At the outset of the case, the trial court appointed Hoang a Vietnamese interpreter, and the interpreter was physically present and

provided interpretation services during all hearings and at trial. Thereafter, the trial court had an ongoing obligation under MCR 1.111(B)(1) to ensure that Hoang received such interpretation services as were necessary to "meaningfully participate in the case or court proceeding." For example, under MCR 1.111(F)(3), the trial court is allowed to appoint more than one interpreter after considering the nature and duration of the proceeding, the number of parties in interest and witnesses requiring interpretation services, the languages of those people, and the quality of remote technology used to ensure effective communication.

Importantly, our court rules define "case or court proceeding" as "any hearing, trial, or other appearance before any court in this state in an action, appeal, or other proceeding, including any matter conducted by a judge, magistrate, referee, or other hearing officer." MCR 1.111(A). Therefore, a party shall receive interpreter services as necessary for the person "to meaningfully participate" in any hearing, trial, etc. A fundamental principle to meaningfully participating in preliminary examinations, plea hearings, and trial is the ability to engage in pretrial preparation with trial counsel. Thus, we conclude that the broad standard set forth under MCR 1.111(B)(1) mandates interpretation services during pretrial preparations when necessary for a defendant to meaningfully participate in the case or court proceeding.

In this case, Hoang was entitled under the court rule to interpretation services during pretrial preparations with his attorney. We further conclude, however, that Hoang received such services, and therefore, cannot show a violation under MCL 755.19a and MCR 1.111. As will be discussed in more detail below, Hoang's trial counsel did not detect a communication breakdown, but even after receiving letters from his client, trial counsel ensured that Hoang had access to an interpreter. Hoang's interpreter participated telephonically during pretrial preparations between Hoang and his attorney, and Hoang did not raise any issue as to interpretation services at the plea hearing. Hoang has not shown that he could not meaningfully participate in the case or court proceedings. Thus, we do not detect any violation of the court rules, and the trial court did not err by failing to ensure the interpreter's physical presence during pretrial meetings with trial counsel.

## 2. SIXTH AMENDMENT RIGHT TO COUNSEL

A defendant also has a constitutional right to consult with counsel and prepare a defense. As stated in *Mitchell*, "[b]ecause the Supreme Court [of the United States] has repeatedly made clear that there is a duty incumbent on trial counsel to conduct pre-trial investigation, it necessarily follows that trial counsel cannot discharge this duty if he or she fails to consult with his or her client." *Mitchell*, 325 F 3d at 744.[3] We conclude there are both state and federal constitutional implications based on a defendant's right to counsel during critical stages of the

_____

[3] The court in *Mitchell* explained that "[i]t cannot seriously be argued that defense counsel's obligation to consult with his client at least once is a new or novel obligation being imposed on the government or that the Supreme Court's cases in *Powell*[ *v Alabama*, 287 US 45; 53 S Ct 55; 77 L Ed 158 (1932)], *Strickland*, and [*United States v*] *Cronic*, [466 US 648; 104 S Ct 2039; 80 L Ed 2d 657 (1984),] do not compel this result." *Mitchell*, 325 F 3d at 744 n 5.

proceedings when a defendant, who is entitled to an interpreter, is prevented from communicating with his attorney because he has been denied an interpreter as mandated under MCL 755.19a and MCR 1.111.

This Court has held that the failure to use an interpreter necessary for simultaneous translation during a defendant's trial without a valid waiver from the defendant implicated both state and federal constitutional protections. In *People v Gonzalez-Raymundo*, 308 Mich App 175, 181-182; 862 NW2d 657 (2014), the trial court appointed a Spanish interpreter, but at the start of trial, the trial court granted defense counsel's request to waive the interpreter's services because of the possible prejudice that defense counsel speculated such services might have on the jury, and the interpreter would then "explain things to the defendant on break." The *Gonzalez-Raymundo* Court concluded that this was not a valid waiver because defendant did not personally waive his right, and "[t]he lack of simultaneous translation implicated defendant's rights to due process of law guaranteed by the United States and Michigan Constitutions." *Id.* at 188. Moreover, this Court held that "a defendant's lack of understanding of the proceedings against him renders him effectively absent," and the "lack of simultaneous translation impairs a defendant's right to confront witnesses against him and participate in his own defense." *Id.* This Court held that "[t]he right at issue is thus not merely statutory as codified by MCL 775.19a, but constitutional, and thus subject to every reasonable presumption against its loss." *Id.*

Depriving a defendant from communicating with his attorney during pretrial preparations—a critical stage of the proceedings—prevents that attorney from fulfilling his duty to investigate and prepare possible defenses. See *Powell v Alabama*, 287 US 45, 59; 53 S Ct 55; 77 L Ed 158 (1932) ("[A] defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise counsel and prepare his defense."). In *Powell*, the trial court had appointed "all the members of the bar" to represent seven African American men during their arraignment on rape charges of two white women. *Id.* at 49, 56. However, the one-day trials for each of the men commenced six days from their arraignment, and the trial court did not identify the defendants' trial attorneys until the day trial began. *Id.* at 56. In the words of the Supreme Court, the trial court's appointment of counsel was "little more than an expansive gesture, imposing no substantial or definite obligation upon any one." *Id.* According to the *Powell* Court, "during perhaps the most critical period of the proceedings against these defendants, that is to say, from the time of their arraignment until the beginning of their trial, when consultation, thorough-going investigation and preparation were vitally important, the defendants did not have the aid of counsel in any real sense, although they were as much entitled to such aid during that period as at the trial itself." *Id.* at 57. Thus, the *Powell* Court held that the effective deprivation of counsel was a violation of the defendants' constitutional rights. See *United States v Cronic*, 466 US 648, 661; 104 S Ct 2039; 80 L Ed 2d 657 (1984) ("*Powell* was thus a case in which the surrounding circumstances made it so unlikely that any lawyer could provide effective assistance that ineffectiveness was properly presumed without inquiry into actual performance at trial.")

The Sixth Circuit Court of Appeals, relying on cases like *Powell* and *Cronic*, addressed the deprivation of a defendant's right to counsel even though the trial court had appointed a trial attorney. In *Mitchell*, the court explained that "[w]hen counsel is appointed but never consults with his client and is suspended from practicing law for the month preceding trial, and the court acquiesces in this constructive denial of counsel by ignoring the defendant's repeated requests

for assistance," there is a violation of the defendant's constitutional right to counsel as governed by the Supreme Court of the United States' decision in [*Cronic*]. *Mitchell*, 325 F 3d at 744. In *Cronic*, the Supreme Court of the United States stated that it "has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Cronic*, 466 US at 659 n 25.

While we conclude that Hoang had a constitutional right to use of an interpreter during attorney-client pretrial preparations, under the facts of this case, there was no Sixth Amendment violation. Hoang acknowledges the fact that he was granted the appointment of an interpreter. He further admits that an interpreter participated via speakerphone while Hoang and his attorney prepared the case and discussed the prosecution's plea offer. Hoang contends, however, that because the interpreter was not physically present while Hoang met with his attorney, he was prevented from fully understanding his attorney, preparing his case, and understanding any plea offers from the prosecution. Consequently, Hoang's contention is not that he was denied his right to counsel for the trial court's failure to provide an interpreter, but that he was denied his right to counsel because he could not *effectively* communicate with his trial counsel through the interpreter. Hoang's argument is without merit. Prior to trial, trial counsel wrote a letter to Hoang and explained that they had communicated effectively in writing and in person on several occasions while preparing the case. In fact, trial counsel told Hoang, "The day I told you what the plea offer was you then told me that you did not speak English, or read or write English." At that point, trial counsel took steps to ensure that the interpreter was available via speakerphone. Trial counsel's letter also shows that trial counsel was satisfied with using the interpreter via speakerphone. Thus, unlike the circumstances in *Powell* and *Mitchell*, trial counsel's actions showed that he worked closely and diligently with Hoang to prepare a defense.[4] We cannot conclude that the failure to have an interpreter physically present during Hoang's pretrial meetings with his attorney amounted to the constructive deprivation of counsel. Therefore, we conclude that there was no violation of Hoang's constitutional right to counsel.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 brief, Hoang argues that trial counsel was ineffective because (1) he should have requested that the interpreter be physically present during pretrial preparations, (2) he failed to impeach Nguyen at trial, (3) he failed to provide rebuttal evidence, (4) he failed to obtain forensic evidence, (5) he failed to introduce a letter from Nguyen, and (6) he failed to introduce the complete and accurately translated transcripts of jail calls he made to Nguyen. We disagree.

## A. STANDARD OF REVIEW

---

[4] We note that the trial court—located in the upper peninsula—also ensured that an interpreter from the southern region of the lower peninsula was physically present for all hearings and trial.

Generally, an ineffective assistance of counsel claim presents a mixed question of fact and constitutional law. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). Constitutional questions are reviewed de novo, while findings of fact are reviewed for clear error. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews an unpreserved ineffective assistance of counsel claim for errors apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

## B. ANALYSIS

To demonstrate ineffective assistance of counsel, a "defendant must show that his counsel's performance was deficient, and that there is a reasonable probability that but for that deficient performance, the result of the trial would have been different." *Matuszak*, 263 Mich App at 57-58. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (quotation marks and citation omitted). A defendant must establish a factual basis for an ineffective assistance of counsel claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Matters of strategy that were not successful, in hindsight, do not constitute deficient performance. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). When reviewing an ineffective assistance of counsel claim, "the inquiry is not whether a defendant's case might conceivably have been advanced by alternate means." *LeBlanc*, 465 Mich at 582.

### 1. REQUEST FOR AN INTERPRETER DURING PRETRIAL PREPARATIONS

"[I]t has been recognized that the right to counsel is the right to the effective assistance of counsel." *Cronic*, 466 US at 654. "Cases on the continuum range from actual to constructive denial of counsel to instances where the performance of counsel is so deficient that there has been a functional denial of counsel guaranteed by the Sixth Amendment." *People v Mitchell*, 454 Mich 145, 153; 560 NW2d 600 (1997), vacated on other grounds in *Mason v Mitchell*, 536 US 901 (2002). While Hoang argues in his appellate brief that there was an actual denial of his right to counsel, he argues in his Standard 4 brief that he was denied the effective assistance of counsel when his requests for an interpreter to be present at attorney-client meetings went unanswered. Hoang's argument fails.

First, Hoang has not shown that his trial counsel's actions—i.e., having an interpreter available via speakerphone—constituted deficient performance. In fact, trial counsel responded to Hoang's requests in a July letter and explained that he had not detected any communication issues between the two of them but that, after Hoang expressed his concerns, trial counsel ensured that an interpreter was made available to Hoang during pretrial preparations. We cannot conclude that trial counsel's use of the interpreter via speakerphone constitutes deficient performance sufficient to prove an ineffective assistance of counsel claim.

Finally, even if trial counsel should have requested that the interpreter be physically present for trial preparation to ensure that Hoang understood the proceedings, any deficient performance in this regard was not prejudicial. Hoang's contention is that, without an interpreter to help him review the file, he could not fully understand the evidence against him or the terms of the plea offer. However, Hoang had every opportunity to discuss his file—including the plea offer—at his meetings with the interpreter. Additionally, Hoang never raised any concern

regarding the terms of the plea offer to the trial court at the plea hearing. Instead, he continually maintained his innocence and focused only on the fact that he wanted the accurate and complete transcripts of his jail calls with his wife—which he believed would exonerate him. For that reason, Hoang has not shown that he would have taken the plea had the interpreter been physically present during trial preparation; therefore, we do not detect prejudice.

## 2. FAILURE TO IMPEACH WITNESS

In his Standard 4 brief, Hoang challenges several strategic decisions made by trial counsel, including that the failure to impeach Nguyen's testimony constituted deficient performance. Hoang first argues that trial counsel failed to impeach Nguyen's testimony with her own contradictory testimony. This argument is unavailing because trial counsel did, in fact, impeach Nguyen's testimony in an attempt to create a reasonable doubt about Hoang's guilt. Trial counsel highlighted Nguyen's inconsistent statements during trial, where she first claimed Hoang used a match to light the fire, but later said he had used a lighter. Trial counsel then highlighted Nguyen's inconsistent testimony from the preliminary examination, where she had stated that she saw Hoang with only a lighter, not matches. After being confronted with her conflicting testimony, Nguyen insisted that she meant a lighter and explained that the inconsistency was the result of the translation. Hoang argues that trial counsel should have asked the interpreter to clarify Nguyen's conflicting testimony, especially since she alleged that the difference in her testimony was due to translation errors. Hoang is essentially asserting that trial counsel should have called the interpreter to testify about the translation of the words for match and lighter. However, trial counsel adequately brought the issue to the jury's attention. Therefore, trial counsel's performance was not deficient.

Hoang also argues that trial counsel failed to impeach Nguyen's trial testimony that she and Hoang did not normally keep a gas can in the apartment because she had testified at the preliminary hearing that they normally kept a gas can in the bathroom. Hoang's argument fails because trial counsel asked Nguyen about the gas can at trial and elicited confusing and inconsistent testimony from her about whether and where they kept the gas can in the apartment.

Hoang also makes several other claims challenging specific areas of trial counsel's cross-examination—even though it did not necessarily involve the impeachment of the witness. Hoang contends that Nguyen contacted him in jail and sent him money in jail, evidenced by the purportedly incorrect translations of the jail calls. Hoang argues that trial counsel failed to question Nguyen about this contact with Hoang despite a no-contact order. However, trial counsel questioned Nguyen about her communications with Hoang after he was arrested, and Nguyen admitted that she sent him money after he called her and asked for it. Accordingly, trial counsel did ask Nguyen about her contact with Hoang, and trial counsel's decision not to persist in questioning Nguyen about this contact was entirely reasonable.

Hoang also contends that his consoling of Nguyen after she jumped out of the window and at the hospital were inconsistent with guilt, and trial counsel should have highlighted Nguyen's reaction to Hoang immediately after her injuries. Hoang fails to explain the relevance of this testimony, and regardless, any decision on the part of trial counsel to refrain from eliciting

testimony on the subject constitutes trial strategy. Considering the evidence as a whole, trial counsel could very well have avoided the subject because a jury might reasonably infer that Hoang manipulated the situation to look like he was playing the part of a worried husband to avoid suspicion, but he really was using it as an opportunity to talk to Nguyen alone and coach her about what to say to the authorities about the fire.

Lastly, Hoang contends that Nguyen's testimony was inconsistent as to when gasoline was poured on her clothing relative to when the fire started. Hoang also argues that the police did not recover the phone in the apartment that Hoang allegedly threw at Nguyen to wake her, the police found his and Nguyen's phones in Nguyen's car, and Hoang was not given copies of the police reports by counsel. Hoang has provided this Court with no factual support for this claim, and he has not made a documented request for the police records. Therefore, this claim has no merit. Hoang is correct that trial counsel did not ask Nguyen about every aspect of her testimony, but again, he has failed to defeat the presumption that counsel's failure to inquire into these matters was a strategic decision designed to highlight only the most inconsistent evidence without bogging the jury down with insignificant details. Cross-examining a victim in an attempted murder case about every potentially inconsistent detail in their testimony can be counterproductive and draw attention to details that support an inference of guilt. For example, our Supreme Court has approved of a defense attorney's decision not to call an expert witness to rebut the prosecution's expert witness when trial counsel explained that creating a battle of the experts tended to bolster the importance of the testimony of the expert witnesses, particularly the prosecution's expert witness. *LeBlanc*, 465 Mich at 580-583. In sum, Hoang has not demonstrated that trial counsel's handling of the defense was anything but reasonably strategic. Witness credibility is a matter for the jury to decide. *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998). Accordingly, having heard both Nguyen's and Hoang's testimony, the jury reasonably chose to credit Nguyen's testimony, in addition to the corroborating evidence, to find Hoang guilty.

## 3. FAILURE TO REBUT EVIDENCE

Hoang argues that trial counsel should have rebutted Nguyen's testimony regarding a jewelry box that fell off the air conditioning unit when she opened the window. When Nguyen testified about opening the window to jump out of the apartment to avoid the fire, she stated that she had stacked things, including a jewelry box, on top of the air conditioning unit. According to Hoang, trial counsel failed to demonstrate that it was impossible for a jewelry box to sit on top of the air conditioning unit, and therefore, it could not have fallen to the ground when his wife opened the window. Hoang claims that the available space on top of the air conditioning unit was too small. Trial counsel asked some of the police officers who testified at trial about the jewelry box and the photographs taken of the bedroom, which showed the jewelry box lying on the ground, but they were not able to provide any details about the size or contents of the jewelry box, or where it was located during the fire.

Hoang appears to be suggesting that Nguyen set the fire to kill him and take the jewelry with her, or some variation on this theme, but the string of inferences necessary to arrive at this conclusion is speculative and does not warrant reversal on this record. Further, on cross-examination, trial counsel did ask Nguyen whether she was upset that Hoang may have been having an affair and confirmed that Nguyen would become the sole owner of the nail salon if

-11-

they divorced. After this line of questioning, trial counsel ended cross-examination, having attempted to leave the jury with the impression that Nguyen had a motive for lying about Hoang starting the fire. Trial counsel's performance was not deficient for failing to rebut the evidence presented.

## 4. FAILURE TO OBTAIN FORENSIC EVIDENCE

Hoang raises other challenges to trial counsel's strategy that involved the use of forensic evidence. Hoang cites trial counsel's closing argument about the lighter to argue that trial counsel should have had the lighter tested for DNA or fingerprints because that evidence would have shown that Nguyen, not Hoang, actually started the fire. In his closing argument, trial counsel argued that the lighter was the only piece of evidence the police failed to test for DNA or fingerprints. Trial counsel made this argument after attacking Nguyen's credibility, arguing that she was jealous about an affair Hoang was having, and stating that she should not have gotten the entire business because they were only married for one year before divorcing. Read in context, trial counsel's point in raising the police's failure to test the lighter was to plant a seed of doubt in the jurors' minds to argue for an acquittal. Hoang's argument on appeal is flawed because it presupposes that testing the lighter would return exonerating evidence. But Hoang has presented no factual basis to support this presupposition and to show that counsel was ineffective for not having the lighter tested, especially because counsel highlighted the police's failure to test the lighter as a point in Hoang's favor.

Hoang also argues that trial counsel was ineffective for failing to clarify whether gasoline found on Hoang's shoes was on the top of the shoes, consistent with splashing, or on the bottom of the shoes, consistent with stepping in gasoline. A forensic scientist testified that there was gasoline on the shoes without specifying where on the shoes. Hoang does not adequately explain why this detail matters or how it would show that Hoang did not start the fire, particularly in light of witness testimony that the apartment, Hoang, and Nguyen all smelled of gasoline. Thus, this argument is without merit.

## 5. FAILURE TO INTRODUCE LETTER

In his Standard 4 brief, Hoang also argues that trial counsel failed to introduce into evidence a letter that Nguyen allegedly wrote to Hoang, or question Nguyen about this letter, in which he alleges that she explained that the police threatened to charge her with conspiracy to commit arson if she did not tell them that Hoang started the fire and in which she apologized to Hoang for lying to the police. Hoang preserved this issue by pursuing a remand for an evidentiary hearing. On remand, trial counsel produced an affidavit stating that Hoang had given him no such letter, and Nguyen wrote a letter stating that she had no further contact with Hoang after they spoke when he was in jail and she sent him money. During the jail calls, Nguyen told Hoang that the police told her not to deny knowing what happened and asked her whether she and her husband were plotting something. Nguyen's description of what the police said to her does not support Hoang's claim that the police directed Nguyen to say that Hoang started the

fire, nor does this conversation between Nguyen and Hoang substantiate the existence of a letter Nguyen wrote to Hoang stating that she lied to the police. In addition, the police had other evidence and other witnesses, and the jury chose to credit the evidence presented, showing that Hoang started the fire and attempted to kill Nguyen. Hoang has not shown that it was unreasonable for the jury to credit the other witnesses' testimony over his version of events.

## 6. FAILURE TO INTRODUCE JAIL CALLS

Hoang argues that trial counsel failed to introduce complete and accurate transcripts of the jail calls, which Hoang continues to maintain were translated erroneously. Hoang raised this issue when he sought a remand for an evidentiary hearing, and the trial court had the recordings of the jail calls retranslated by a different translator. First, the transcripts of the calls show that Hoang initiated the calls and that he told Nguyen to say that nothing happened when she testified at the preliminary examination. Hoang also told Nguyen the story he told the police. When Hoang raised the issue of the transcripts at the sentencing hearing, trial counsel stated that he did not introduce the transcripts of the calls into evidence because they tended to show Hoang's guilt. We have reviewed the transcripts and agree with trial counsel. Further, Hoang has described no attempt to have a third party interpret the recordings, and he has provided no details about what part of the recordings were incorrectly translated. Hoang has not supported this claim with a factual basis that warrants remand.

In an affidavit attached to the Standard 4 brief, Hoang stated that the interpreter did not interpret everything that the witnesses said at trial, the interpreter and trial counsel refused to respond to Hoang's concerns, and the interpreter refused to ask the trial court and trial counsel for clarification of witness testimony on his behalf, such as his belief about the location of the gas can. Hoang also claims that he did not understand when trial counsel tried to explain the plea offer to him and that trial counsel got frustrated with Hoang when he refused to plead guilty. Hoang did not raise this issue in the remand motion or in his arguments on appeal. Nonetheless, even accepting these statements as properly presented arguments, they are inconsistent with the specificity of Hoang's claims that trial counsel failed to impeach Nguyen's testimony properly, failed to introduce an exculpatory letter that Nguyen allegedly wrote to Hoang, and failed to introduce transcripts of calls between Nguyen and Hoang. Accordingly, these claims have no merit and do not warrant a new trial.

In sum, Hoang raises challenges to various aspects of the trial court proceedings, but the specificity of his ineffective assistance of counsel claims, particularly those presented in the Standard 4 brief, belie his overall claim that he did not understand what was happening throughout the proceedings. Further, Hoang has not demonstrated a factual basis supporting his claims. Neither a remand for an evidentiary hearing nor a new trial is warranted.

Affirmed.

/s/ Thomas C. Cameron
/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh